DOWNEY, Judge.
The issue before us in this appeal is whether the acceptance of certain checks and promissory notes by appellant in the settlement of a medical malpractice action constitutes “payment” within the meaning of section 768.54(2)(b), Florida Statutes (1981), so as to trigger the obligation of the Florida Patient’s Compensation Fund to pay the covered claim. We hold that it does, based on the facts of this case.
Appellant, John Mantesta, the plaintiff below, filed and settled a medical malpractice action in which the Florida Patient’s Compensation Fund had been joined. The defendant physician, Frank A. Stuart, M.D., was a member of the Fund. The parties to the malpractice action arrived at a settlement figure of $175,000 with the first $100,000 to be paid by Dr. Stuart and the Fund agreeing to pay the $75,000 balance.
Pursuant to the terms of the settlement agreement, Dr. Stuart paid the initial $100,-000 by giving appellant two checks totaling $25,000 and by executing and delivering to the appellant four promissory notes totaling $75,000, payable annually over a period of four years. In return, appellant executed a release of all claims against Dr. Stuart. The settlement agreement further provided that the Fund was to pay the remaining $75,000 “upon the complete satisfaction and payment in full” by Dr. Stuart of his $100,000 obligation and that appellant and the Fund agreed to litigate in a declaratory action whether the delivery and acceptance of the promissory notes constituted payment under the terms and conditions of section 768.54(2)(b), Florida Statutes (1981).
Appellant subsequently moved for summary judgment on the issue and appellee, the Florida Patient’s Compensation Fund, filed a cross-motion for summary judgment. Appellant’s motion was supported by his affidavit and that of Dr. Stuart’s attorney, Paul R. Larkin, Jr., stating that they intended for the checks and promissory notes to constitute full payment of appellant’s claim against the defendant. In its cross-motion, appellee maintained that the plain language of the statute as well as substantial policy considerations require that the health care provider satisfy his obligation by making actual payment of the $100,000 to the claimant before the Fund’s obligation arises. The trial court agreed with this position and entered an order on October 11, 1985, granting appellee’s motion for summary judgment.
Although the pertinent statutory section provides no definition for the terms “pays” or “payment,” appellant asserts that payment of a debt is not necessarily limited to money but can be effected by any medium agreed to by the parties. Appellant states that he and Dr. Stuart intended for the checks and promissory notes to constitute full payment of the $100,000 obligation as evidenced by the fact that he executed a reléase dismissing his medical malpractice claim with prejudice.
Appellee argues that, despite the parties' intentions and agreement that the notes constitute full payment, such an arrangement is not actual payment and does not satisfy the statutory condition precedent to *37 the Fund’s liability since Dr. Stuart’s debt has merely been converted to a contractual obligation, which remains unsatisfied. Ap-pellee submits that a strict requirement of actual payment should be found in the interests of uniformity and avoidance of collusion and illusory settlements.
The question of what constitutes payment under section 768.54(2)(b), Florida Statutes (1981), cannot be ascertained from the statute itself since it contains no definition of the term nor does it impose any limitations on the manner of satisfying a claim. Absent a specific statutory definition of the term, the controlling issue in this case is the intent of the parties. If it is determined that the parties clearly agreed and intended that the checks and notes constitute absolute payment, then it appears that the underlying debt is thereby extinguished.
As stated in United States v. Nill, 518 F.2d 793 (5th Cir.1975), citing the language of Murphy v. Green, 102 Fla. 102, 135 So, 531 (1931):
“If there is an express agreement by the creditor to receive a note as absolute payment, and to run the risk of its being paid, it will be held to be an extinguishment or payment of the precedent debt, whether the note is afterwards paid or not, but a clear agreement or manifestation of intention of both parties to that effect is essential.” 135 So. at 534.
It will be noted that the Court spoke in terms of “express agreement” and said further that “a clear agreement or manifestation of intention of both parties to that effect is essential ” (emphasis added) 135 So. at 534.
The meaning of this language seems plain: In the absence of a clear agreement (and there was none shown by the evidence in this case) there must be a clear manifestation of an intention that such was the agreement. In the end, this amounts to the same thing.
Id. at 798.
Here, there is a clear manifestation of the parties’ intention that the promissory notes constitute absolute payment. The fact that the settlement agreement provides for a declaratory action to determine whether the promissory notes constituted payment under the statute demonstrates that, the parties clearly intended such result, subject to the court’s approval. The affidavits of appellant and attorney Larkin are further evidence of the parties’ intent that the notes were to constitute full payment. Thus, if the rights of third parties were not involved, it would seem fairly clear that the checks and notes constitute sufficient payment of the underlying debt. However, if the legislative purpose of the act is not served by such an interpretation, the agreement between the doctor and patient should not carry the day.
Section 768.54(2)(b), Florida Statutes (1981), provides:
(b) A health care provider shall not be liable for an amount in excess of $100,-000 per claim or $500,000 per occurrence for claims covered under subsection (3) if the health care provider had paid the fees required pursuant to subsection (3) for the year in which the incident occurred for which the claim is filed, and an adequate defense for the fund is provided, and pays at least the initial $100,-000 or the maximum limit of the underlying coverage maintained by the health care provider on the date when the incident occurred for which the claim is filed, whichever is greater, of any settlement or judgment against the health care provider for the claim in accordance with paragraph 3(e).
There is no express limitation on the method of payment contained in the statute. It requires only that the health care provider “pays” the initial $100,000. We know that payment of a debt is not necessarily limited to payment in cash but can be accomplished by the payment of anything of value, the intention of the parties being controlling. Nor do we find the method of payment provided for here at odds with the purpose of the Fund. As the court said in Florida Patient’s Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla.1985):
The Florida Patient’s Compensation Fund provides health care providers with *38 medical malpractice liability coverage for the benefit of both the health care providers and those members of the public who become victims of medical malpractice.
Id. ‘ at 788. In sum, we agree with appellant’s statement in his brief that “Moreover, nothing in the statute prohibits the type of structured settlement agreement which the parties agreed upon in this case. Indeed, a liberal interpretation of the word ‘pays' encourages settlement and judicial economy by allowing the parties to work out an agreement which both the Plaintiff and health care provider can live by, and at the same time insures that the Plaintiff will seasonably receive from the Fund that amount of the claim which the Fund is obligated to pay.”
Finally, appellee’s reliance upon our case of Florida Patient’s Compensation Fund v. St. Paul Fire and Marine Insurance Co., 483 So.2d 770 (Fla. 4th DCA), rev. denied, 494 So.2d 1150 (1986), seems misplaced. There, we were dealing with a different section of the statute, section 768.31(4)(d)(2), instead of section 768.-54(2)(b), a section dealing with the Uniform Contribution Among Tortfeasors Act, which provides for contribution after the common liability has been paid. Furthermore, and most importantly, there is no doubt about the legislative intention in said statutory provision because the Commissioner’s Comment under said provision of the Model Act states that the party seeking contribution must discharge the obligation by actual payment. In addition, the rationale for requiring actual payment there is inapplicable here.
In view of the foregoing, we hold the trial court erred in finding that the checks and notes accepted by appellant did not constitute payment under the Act so as to trigger the obligation owed by the Fund to pay the remainder of the settlement.
Accordingly, the judgment appealed from is reversed and the cause is remanded with directions to enter final judgment for the appellant.
GLICKSTEIN, J., and WETHERINGTON, GERALD T., Associate Judge, concur.